# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KRISTEN A. EARL**, | Case No. 6:12-CV-01306-SI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN,** Commissioner of Social Security**,** | |
| Defendant. | |

Tim Wilborn, Wilborn Law Office, P.C., P.O. Box 370578, Las Vegas, NV 89137. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Christopher J. Brackett, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Ms. Kristen A. Earl seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying Ms. Earl's application for Disability

Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). For the

PAGE 1 – OPINION AND ORDER

following reasons, the Commissioner's decision is REVERSED and REMANDED for an award
of benefits.

## BACKGROUND

### A.  The Application

Ms. Earl filed an application for DIB and SSI on December 9, 2008, alleging disability
beginning on October 1, 2004. AR 136-39. She subsequently amended the alleged onset date of
disability to September 1, 2006. AR 246. Ms. Earl alleges disability due to a combination of
physical and mental impairments including kidney disease, recurrent urinary tract infections
("UTI"), seizure disorder, migraine headaches, bipolar disorder, posttraumatic stress disorder,
anxiety disorder, affective disorder, panic disorder, fibromyalgia, and degenerative disc disease.
AR 22-23. The Commissioner denied her application both initially and on reconsideration;
therefore she requested a hearing before an Administrative Law Judge ("ALJ"). AR 82-85, 109-
10. An administrative hearing was held on December 15, 2010. AR 20. The ALJ determined that
Ms. Earl was not disabled. AR 33. The Appeals Council denied Ms. Earl's request for review,
making the ALJ's decision the final decision of the Commissioner. AR 1-6. Ms. Earl now seeks
judicial review of that decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity
by reason of any medically determinable physical or mental impairment which . . . has lasted or
can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.
§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for
determining whether an applicant is disabled within the meaning of the Social Security Act."
*Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.
§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each

step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.     Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless
expected to result in death, an impairment is "severe" if it significantly
limits the claimant's physical or mental ability to do basic work activities.
20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted
or must be expected to last for a continuous period of at least 12 months.
20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe
impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);
416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis
proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
the listed impairments, the analysis proceeds beyond step three. At that
point, the ALJ must evaluate medical and other relevant evidence to assess
and determine the claimant's "residual functional capacity" ("RFC"). This
is an assessment of work-related activities that the claimant may still
perform on a regular and continuing basis, despite any limitations imposed
by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c);
416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC,
the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform
his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c);
        416.960(c). If the claimant cannot perform such work, he or she is
        disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

        The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

        The ALJ began his opinion by noting that Ms. Earl met the insured status requirements of

the Social Security Act through September 30, 2007. AR 22. The ALJ then applied the sequential

analysis. At step one, the ALJ found that Ms. Earl had not engaged in substantial gainful activity

("SGA") after the alleged onset date of September 1, 2006. *Id.* At step two, the ALJ determined

that Ms. Earl had severe impairments including chronic migraines, seizure disorder, kidney

disease, bipolar disorder, affective disorder, anxiety disorder, posttraumatic stress disorder, panic

disorder, and history of substance abuse. *Id.* The ALJ also found that Ms. Earl had non-medically

determinable impairments of fibromyalgia and degenerative disc disease. AR 23. At step three, the ALJ found that Ms. Earl did not have an impairment or combination of impairments that met or medically equaled any of the specific impairments listed in the regulations. *Id.*

The ALJ then determined that, considering all of her impairments, Ms. Earl had the RFC to perform light work, subject to several specifications, including that Ms. Earl was "likely to be absent more than two days each month because of her substance abuse." AR 25. At step four, the ALJ determined that Ms. Earl was unable to perform past relevant work. At step five, considering her age, education, work experience, and RFC based on all impairments including substance abuse, the ALJ determined that there were no jobs that existed in significant numbers in the national economy that she could have performed. AR 25-26. Thus, the ALJ found that, considering all of her impairments including substance abuse, Ms. Earl was under disability as defined in the Social Security Act. AR 26.

The ALJ then reapplied the sequential analysis considering only Ms. Earl's remaining limitations, assuming she were to stop her substance abuse. AR 26. At step two, the ALJ determined that if Ms. Earl stopped her substance abuse, her remaining limitations would constitute a severe impairment or combination of impairments. AR 26-27. At step three, the ALJ found that Ms. Earl would not have an impairment or combination of impairments that met or medically equaled any of the specific impairments listed in the regulations. AR 27-28.

The ALJ then determined Ms. Earl's hypothetical RFC if she were to stop her substance abuse. AR 28-31. The ALJ found that if Ms. Earl stopped substance abuse, she would have the RFC to perform light work subject to several specifications. AR 28. These specifications tracked the specifications listed in the ALJ's previous RFC finding, with two exceptions: Ms. Earl (1) would not "require close supervision when working in hazardous situations;" and (2) would

not be "likely to be absent more than two days each month because of her substance abuse."
AR 25, 28. At step four, the ALJ found that Ms. Earl would be unable to perform past relevant
work. AR 31-32. At step five, the ALJ posed the second RFC to a vocational expert ("VE") in a
vocational hypothetical, and, based on the hypothetical presented, the VE testified that Ms. Earl
was capable of performing certain jobs that existed in significant numbers in the national
economy. AR 32. The ALJ concluded, therefore, that substance abuse was a contributing factor
material to the determination of disability. Accordingly, the ALJ found that Ms. Earl was not
disabled under the Social Security Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper
legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see
also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means
"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*,
554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039
(9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate
to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the
Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679
(9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's
interpretation is a rational reading of the record, and this Court may not substitute its judgment
for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A]
reviewing court must consider the entire record as a whole and may not affirm simply by
isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630
(9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal

PAGE 6 – OPINION AND ORDER

quotations omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray,* 554 F.3d at 1226.

## DISCUSSION

Ms. Earl seeks review of the determination by the ALJ that she was not disabled because substance abuse was a contributing factor material to the determination of disability. Ms. Earl argues that the ALJ erred by: (1) determining a RFC that did not include all of her limitations; and (2) improperly relying on a VE opinion that was based on a hypothetical that did not include all of Ms. Earl's limitations.

## A.  Ms. Earl's Residual Functional Capacity

Ms. Earl claims that the ALJ failed to include all of her limitations in either RFC. Specifically, Ms. Earl argues that the ALJ improperly rejected: (1) the medical opinion of her medical doctors; and (2) the lay opinions of two witnesses, resulting in RFC findings that did not include all of her limitations. The Court addresses each of Ms. Earl's arguments in turn.

### 1.  Legal Effect of Substance Abuse on Determining the Claimant's RFC

If the ALJ determines at step three of the sequential analysis that the claimant does not meet or medically equal a listed impairment, the ALJ must determine the claimant's RFC. The RFC is an assessment of work-related activities that the claimant can still perform on a regular and continuing basis, despite any limitations imposed by his or her physical and mental impairments. 20 C.F.R. §§ 404.1520(e); 404.1545; 416.920(e); 416.945.

Determining a claimant's RFC requires the ALJ to consider the claimant's physical abilities, mental abilities, and other impairments. 20 CFR §§ 404.1545(a); 416.945(a). The critical inquiry is the effect of the claimant's impairments on his or her ability to sustain substantial gainful employment. "[O]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." *Reddick v. Chater*, 157 F.3d 715, 724 (9th

Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995)). If a claimant has an impairment or combination of impairments that is likely periodically to render her incapable of sustaining a regular work schedule, that limitation must be included in the RFC. *See id.*

When the ALJ's analysis results in a finding of disability at step four or step five of the sequential analysis, and there is evidence in the record of substance abuse, the ALJ must conduct a drug abuse analysis to determine which of the claimant's impairments would persist if the claimant stopped using drugs. 20 C.F.R. § 404.1535. A claimant who is otherwise determined to be disabled "shall not be considered to be disabled . . . if alcoholism or drug addiction [is] . . . a contributing factor material to the Commissioner's determination" of disability. 42 U.S.C. § 423(d)(2)(C). The key inquiry in the substance abuse analysis is whether, if the claimant discontinued substance abuse, his or her remaining physical and mental limitations would render the claimant disabled under the sequential analysis. 20 C.F.R. § 404.1535(b)(1). If the response is affirmative, the claimant's substance abuse is not a contributing factor material to the determination of disability, and the claimant is disabled. 20 C.F.R. § 404.1535(b)(2)(i); *see also Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001). Conversely, if the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied. 20 C.F.R. § 404.1535(b)(2)(ii); *see also Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).

The claimant bears the burden of proving that substance abuse is not a material factor contributing to his or her disability. *Parra*, 481 F.3d at 744-45, 748. To carry this burden, the claimant must offer evidence that the disabling effects of the impairment or impairments would have remained had the claimant stopped abusing drugs and alcohol. *Id.* at 748-49. Evidence that is inconclusive does not satisfy this burden. *Id.* at 749.

## 2.  Dr. Pearson's Testimony

Ms. Earl claims that the ALJ erred by improperly rejecting the opinion of her treating physician, Dr. Paul Pearson, who opined that Ms. Earl's recurrent UTI would cause her to be absent from work four or more days per month, irrespective of her substance abuse. Ms. Earl argues that the ALJ's RFCs were inadequate because they did not include a limitation reflecting Dr. Pearson's improperly rejected opinion. The Court agrees.

The medical opinion of a claimant's treating physician is entitled to great weight. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R § 404.1527(c). If a treating physician's testimony is not contradicted by substantial evidence in the record and is supported by medically acceptable clinical findings, it is given controlling weight and the ALJ may only reject it for "clear and convincing" reasons. *Holohan*, 246 F.3d at 1202; 20 C.F.R. § 404.1527(c)(2). Even if the treating physician's testimony is contradicted by substantial evidence, "[i]n many cases [it] will [nonetheless] be entitled to the greatest weight and should be adopted, even [though] it does not meet the test for controlling weight." *Orn*, 495 F.3d at 631. The ALJ, however, need not accept a treating physician's opinion if it is conclusory, inadequately supported by clinical findings, or pertains to a matter not related to his or her area of specialization. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); 20 C.F.R. § 404.1527(d).

Dr. Pearson was Ms. Earl's primary treating physician for more than ten years. During that time, he treated Ms. Earl on numerous occasions, including extensive diagnosis and treatment of Ms. Earl's recurrent UTI. Dr. Pearson's detailed clinical reports, included in the record, demonstrate an comprehensive understanding of Ms. Earl's medical condition, developed over the course of a decade-long doctor-patient relationship.

In a 2010 check-off report, Dr. Pearson opined, *inter alia*, that Ms. Earl's marijuana use exacerbated her mental impairments. The ALJ assigned "great weight" to that opinion, citing it as the primary basis for concluding that, but for her substance abuse, Ms. Earl's mental impairments would not cause her to be absent from work more than two days per month. In the same report, however, Dr. Pearson also opined that Ms. Earl's recurrent UTI would cause her to be absent from work four or more days per month and that abstaining from substance abuse would not mitigate that limitation. The ALJ gave this portion of Dr. Pearson's opinion "little weight," finding that it is contradicted by the Disability Determination Services ("DDS") report and the testimony of a 2009 consultative examiner, Dr. Nancy Cloak. The ALJ ultimately dismissed Dr. Pearson's opinion that Ms. Earl's physical impairments would disrupt her ability to maintain a regular work schedule. Accordingly, the ALJ did not include a corresponding limitation in either RFC finding.

Dr. Pearson's testimony that Ms. Earl's physical impairments would cause her to miss four or more days of work per month is consistent with his prior treatment records indicating Ms. Earl's periodic hospitalization for treatment of her recurrent, antibiotic-resistant UTI. In light of Dr. Pearson's extensive and consistent clinical findings, the fact that the specific testimony at issue was elicited in the form of a check-off report does not render it conclusory or inadequately supported. This is not a case in which a treating physician with limited knowledge of the claimant "merely checked boxes without giving supporting explanations."[1] *Holohan*, 246 F.3d at 1207; *Crane v. Shalala*, 76 F.3d 251, 253 (ALJ properly rejected check-off reports that failed to adequately support their conclusions). Nor is an opinion on the limitations caused by

---

[1] Argument that the nature of Dr. Pearson's report diminishes its credibility is further undermined by the ALJ's substantial reliance on it to establish the exacerbating effect of marijuana use on Ms. Earl's mental impairments.

Ms. Earl's UTI beyond the scope of Dr. Pearson's expertise. *See* 20 C.F.R. § 404.1527(d). In

sum, Dr. Pearson's testimony falls squarely within the type of medical opinion that is entitled to

great, or controlling, weight. *See Orn*, 495 F.3d at 631; *Holohan*, 246 F.3d at 1202.

The ALJ based his rejection of Dr. Pearson's testimony on alleged contradictory evidence

in the record, including findings of DDS and the report of the 2009 consultative examiner,

Dr. Cloak. In relevant part, Dr. Pearson testified to two points: (1) that cessation of substance

abuse would have no mitigating effect on Ms. Earl's recurrent UTI; and (2) that her recurrent

UTI would cause her to be absent from work four or more days per month.

The record does not contain substantial evidence contradicting those opinions by

Dr. Pearson. Dr. Cloak's report states only that "[i]n the short term, [Ms. Earl] should be able to

manage regular work attendance and complete a normal work day." AR 770. Dr. Cloak does not

define what she means by "short term," nor does she offer an opinion regarding to what extent, if

any, Ms. Earl's physical impairments including recurrent UTI would cause her to be absent from

work. Similarly, none of the other evidence cited by the ALJ makes any specific reference to

Ms. Earl's recurrent UTI, nor does it directly contradict Dr. Pearson's opinion that UTI would

cause Ms. Earl to be periodically but regularly absent four or more days per month from work.

Dr. Pearson's specific testimony that Ms. Earl's recurrent UTI would cause her to be

absent from work four or more days per month, irrespective of her continued marijuana use, is

not contradicted by substantial evidence in the record. Further, the ALJ did not offer a clear and

convincing reason to reject Dr. Pearson's uncontradicted testimony. Therefore, Dr. Pearson's

testimony on this issue is entitled to controlling weight. The ALJ was required to credit that

testimony, and the RFC should have contained a limitation reflecting the adverse effect of

Ms. Earl's recurrent UTI on her ability to maintain a regular work schedule.

Even if Dr. Cloak's testimony or the DDS reports were sufficient to contradict Dr. Pearson, the ALJ's rejection of Dr. Pearson's testimony was still in error. An ALJ may reject the testimony of a treating physician in favor of the contradictory testimony of a non-treating doctor only if the ALJ provides "specific and legitimate" reasons that are supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202. The ALJ must still give deference to the treating physician's opinion and weigh it according to the factors prescribed in 20 C.F.R. § 404.1527, including the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship. *Id.* at § 1404.1527(c). Here, the ALJ provided no reason for rejecting Dr. Pearson's opinion other than a general, conclusory assertion that it overstated the severity of Ms. Earl's impairments. Nor did the ALJ apply any of the § 404.1527 factors, all of which support the credibility of Dr. Pearson's testimony in this case. Because the ALJ failed properly to evaluate Dr. Pearson's testimony or to provide specific and legitimate reasons for rejecting it, the rejection was in error, even if the record had contained contradictory testimony from a non-treating doctor.

### 3. The Lay Witness Testimony

Ms. Earl also argues that the ALJ improperly rejected the lay witness testimony of Katherine Hinman and Stephanos Messaris, Ms. Earl's caseworker and roommate, respectively. The Court finds that the ALJ properly rejected this testimony.

Lay witness testimony pertaining to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must consider. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ must either credit the testimony or provide reasons "germane to each witness" for rejecting it. *Dodrill*, 12 F.3d at 919. An ALJ, however, is not required to discuss every witness's testimony on an "individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d

1104, 1114 (9th Cir. 2012). After the ALJ has provided clear and convincing reasons for discounting the testimony of a lay witness, the ALJ may reject similar testimony of other lay witnesses by pointing to applicable, previously stated reasons. *Id.*; *see also Valentine v. Comm'r Soc. Sec. Admin.* 574 F.3d 685, 694 (9th Cir. 2009). Inconsistency with the medical record is a sufficient reason to discredit lay testimony. *Bayliss*, 427 F.3d at 1218. The Court will uphold the ALJ's determination of a lay witness' lack of credibility due to inconsistency with the medical record if there is substantial evidence supporting the ALJ's decision. *See Id.*

In this case, the ALJ appropriately discredited Ms. Earl's own testimony based on its inconsistency with the medical record, referencing the testimony of two doctors and one case worker who indicated that Ms. Earl appeared to be overstating the severity of her impairments. Immediately following the analysis of Ms. Earl's credibility, the ALJ considered and rejected the similar testimony of lay witnesses, Ms. Hinman and Mr. Messaris, based on substantially similar reasons; namely, contradicting the objective (medical) evidence and overstating the severity of Ms. Earl's symptoms. By pointing to clear and convincing reasons previously given for rejecting Ms. Earl's own, substantially similar testimony, the ALJ provided reasons germane to Ms. Hinman and Mr. Messaris that were sufficient to reject their testimony. *See Molina*, 674 F.3d at 1114.

**B.  Limitations Improperly Excluded from the Vocational Hypothetical**

Ms. Earl argues that the ALJ erred by improperly relying on VE testimony that was based on an invalid vocational hypothetical. Specifically, Ms. Earl argues that the VE opinion lacked evidentiary value because it did not include all of Ms. Earl's limitations that were properly supported by the record.[2] The Court agrees.

---

[2] Ms. Earl argues that the hypothetical improperly excluded both physical and mental impairments. Because the Court finds that the ALJ's failure to include all of the limitations

In hypotheticals posed to the VE, an ALJ need only include those limitations supported by substantial evidence. *Robbins*, 466 F.3d at 886. The ALJ may not, however, disregard limitations properly supported by the record. *Id.* When the ALJ credits the opinion of a medical source, the ALJ must include the limitations described by the medical source in the functional limitations of the RFC. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see also Amanti v. Comm'r Soc. Sec. Admin.*, No. 6:11-cv-06378-MA, 2012 WL 5879530, at *5 (D. Or. Nov. 19, 2012) (finding that the ALJ erred by not including limitations supported in the record in the RFC).

The ALJ presented the VE with a hypothetical based on the second RFC, which included only the limitations that the ALJ determined Ms. Earl would retain if she discontinued substance abuse. Unlike the initial RFC, the RFC posed to the VE did not include any limitation on Ms. Earl's ability regularly to attend a job. As discussed above, the ALJ improperly rejected Dr. Pearson's testimony that Ms. Earl's recurrent UTI would cause her to be absent from work at least four days per month, even if she discontinued substance abuse. Had the ALJ appropriately credited Dr. Pearson's testimony, the RFC and the VE's hypothetical would have included that limitation. Thus, the hypothetical considered by the VE was incomplete.

If the hypothetical posed to the VE does not reflect all of the claimant's properly supported limitations, the VE's opinion lack's evidentiary value. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). In this case, the VE testimony lacked evidentiary value because it was based on a hypothetical that did not include Ms. Earl's limitation of being absent from work four or more days per month due to her recurrent UTI. At step five of the sequential analysis, the

---

stemming from Ms. Earl's physical impairments in the vocational hypothetical is sufficient to require remand for the award of benefits, the Court does not address Ms. Earl's argument that limitations stemming from her mental impairments were improperly excluded.

burden shifts to the Commissioner to prove that the claimant can engage in SGA that exists in significant numbers in the national economy. *Yuckert*, 482 U.S. at 141-42. Here, the ALJ relied on the VE's testimony to conclude that the Commissioner had met its burden. Because the ALJ's conclusion relied on a VE opinion that lacked evidentiary value, the ALJ's finding of no disability at step five of the sequential analysis was not supported by substantial evidence.

## C.  Remand for Benefits

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* (quoting *Benecke*, 379 F.3d at 593). The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (*en banc*)). The reviewing court should decline to

credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (citation and internal quotation marks omitted).

As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Pearson's testimony that Ms. Earl's recurrent UTI would cause her to be absent from work four or more days per month, irrespective of her substance abuse. That evidence should have been credited, and a corresponding limitation should have been included in Ms. Earl's RFC. The ALJ found that if Ms. Earl's RFC included a limitation that Ms. Earl would be likely to miss more than two days of work per month, she would be unable to perform any SGA available in significant numbers in the national economy, requiring a determination of disability. The ALJ's sole basis for determining that Ms. Earl was not disabled was his erroneous conclusion that but for her substance abuse, Ms. Earl's RFC would not include that limitation. Had the ALJ properly credited Dr. Pearson's testimony, by the ALJ's own reasoning Ms. Earl's substance abuse would have been found immaterial to a determination of disability. Thus, it is clear from the record that properly crediting Dr. Pearson's testimony requires a finding of disability. The record in this case is fully developed and there are no outstanding issues to resolve.

## CONCLUSION

The Commissioner's determination of no disability is REVERSED and this case is REMANDED for an award of benefits.

**IT IS SO ORDERED**.

DATED this 29th day of October, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge